# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1384

_____

United States,                                    *
                                                  *
              Appellee,                           *
                                                  *    Appeal from the United States
       v.                                         *    District Court for the Western
                                                  *    District of Missouri.
Joseph R. Grooms,                                 *
                                                  *
              Appellant.                          *

_____

Submitted: October 17, 2007
Filed:  November 6, 2007

_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

On June 7, 2005, a federal grand jury returned an indictment in the Western District of Missouri charging Joseph R. Grooms with (1) being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1);[1] (2) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3)

_____

[1] 18 U.S.C. § 924(e) provides that, if the defendant has been convicted of three "violent felonies" or "serious drug offenses," as defined in the statute, then the prescribed punishment for a violation of 18 U.S.C. § 922(g)(1) is not less than fifteen years in prison.

possession with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

On February 7, 2006, Grooms moved to suppress evidence found in his vehicle. The district court[2] adopted the findings of the magistrate judge[3] that the search was permitted under the rationale of New York v. Belton, 453 U.S. 454 (1981), and Thornton v. United States, 541 U.S. 615 (2004); officers can search a vehicle as long as the search is contemporaneous with a lawful custodial arrest.

On September 12, 2006, Grooms pleaded guilty to all three counts. The district court sentenced Grooms as an armed career criminal to 188 months imprisonment on each count, to be served concurrently, followed by five years of supervised release. Grooms appeals the denial of his motion to suppress the evidence found in his vehicle. We affirm.

I

Early on the morning of January 28, 2005, Grooms was involved in a verbal altercation with security personnel ("the bouncer") at America's Pub, a nightclub in the Westport Entertainment District of Kansas City, Missouri. Grooms told the bouncer he was returning to his truck to get a gun.

Having received a physical description of Grooms, Westport public safety ("WPS") officers identified Grooms as he drove away in his truck. Because Grooms appeared to be leaving the Westport area, the WPS officers did not attempt to stop him. Grooms, however, returned, and legally parked the truck about one-half block

---

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

[3]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

from the America's Pub in a valid, unmetered parking spot. As the WPS officers were exiting their vehicles to approach him, Grooms and his passenger exited his truck and shut their doors. Grooms was standing very close to his vehicle, so the WPS officers moved him away from the truck door. Because he had threatened to retrieve a firearm to use on the bouncer, the WPS officers patted him down for weapons and placed him and his passenger in handcuffs. The WPS officers called the Kansas City Missouri Police Department (KCPD) and police officers responded to the scene within minutes.

When the police officers arrived, Grooms was standing next to his truck in handcuffs. The truck was locked and his keys had been taken from him. A KCPD dispatcher confirmed Grooms had an outstanding warrant in Kansas City, Missouri, for a moving violation, and an extraditable warrant in Jackson County from Missouri State Highway Patrol for failure to secure a load.[4] A police officer informed him the officer had a right to search Grooms's vehicle because of his extraditable warrant for arrest. He asked for a private conversation with the officer, during which he explained he had returned to Westport to pick up two girls when he was stopped by WPS. Grooms also told the police officer he had been convicted of manslaughter because he accidentally shot his best friend. He further stated his trunk contained two boxes, which belonged to two males who were occupants in his truck earlier that night. The KCPD officers arrested him on his outstanding warrants.

Prior to the search of the truck, the KCPD officers asked Grooms a few times for his consent to search; Grooms refused. On the dash camera videotape of the incident, an officer can be heard saying to Grooms: "You have an extraditable warrant that gives me the right to search your car." Less than eight minutes after their arrival on the scene, the KCPD officers searched Grooms's truck and found a black, hard plastic case, which appeared to be a gun case. A search of the gun case revealed

---

[4]Grooms's passenger was released at the scene because there were no warrants for his arrest.

two handguns. The officers also found a locked gray Sentry lockbox. In the driver's side door compartment of the vehicle, the officers found Grooms's key ring containing the key to the lockbox. Upon opening the locked box, the KCPD officers discovered clear plastic bags containing narcotics and a digital scale. When Grooms was searched, the officers discovered he had a large amount of cash on his person.

Grooms was indicted on drug and gun violations. As a result of his motion to suppress the evidence, the Court held an evidentiary hearing. The Magistrate Judge concluded the search was contemporaneous to Grooms's arrest and justified under Belton. He entered a conditional plea to all counts. On appeal, he argued the search was unconstitutional and all resulting evidence should be suppressed.

## II

Grooms argues he was not a recent occupant of his vehicle. He also argues the search of his vehicle cannot be justified as a search incident to arrest because the officers were in no danger and there was no likelihood he was going to destroy any evidence since he was handcuffed and could not access his truck.

## A

When an appellant challenges the denial of a suppression motion, we review the lower court's factual findings for clear error and its legal conclusions *de novo*. United States v. Black Bear, 422 F.3d 658, 661 (8th Cir. 2005).

## B

The Supreme Court held in Belton "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453

U.S. at 460. <u>Belton</u> does not require the officers to demonstrate they were in danger to justify the search of the vehicle, nor are they limited to searching the area within the immediate control of the defendant and from which he might obtain a weapon. <u>Id.</u> at 461. Officers who have made a lawful custodial arrest may also examine the contents of any containers found within the passenger compartment. <u>Id</u>. at 460; <u>see also</u> <u>United States v. Williams</u>, 165 F.3d 1193, 1195 (8th Cir. 1999).

In <u>Thornton vs. United States</u>, the Supreme Court clarified the <u>Belton</u> rule and held the rule applies even when the officer first makes contact with the arrestee *after* the arrestee has exited from the vehicle. 541 U.S. 615, 617, 620-21 (2004). The Supreme Court acknowledged a person's classification as a "recent occupant" may turn on his spatial and temporal relationship to the car at the time of arrest and search; however, it "does not turn on whether he was inside or outside the car at the moment the officer first initiated contact" with the recent occupant. <u>Id</u>. at 622.

Grooms relies on this statement in <u>Thornton</u> and argues he is not a recent occupant because eight minutes is too long after an arrest to conduct a valid search incident to arrest. In <u>United States v. Hrasky</u>, however, we found an automobile search which began one hour after the defendant was arrested was a valid search incident to arrest because we found the defendant was a "recent occupant." 453 F.3d 1099, 1102 (8th Cir. 2006). We noted "the determination of whether a search is a contemporaneous incident of arrest involves more than simply a temporal analysis" and concluded "a search need not be conducted immediately upon the heels of an arrest, but sometimes may be conducted well after the arrest, so long as it occurs during a continuous sequence of events." <u>Id.</u> We reasoned the search in that case "took place at the scene of the arrest, immediately after the police determined to proceed with a full custodial arrest" and was therefore valid. <u>Id</u>. at 1103. In this case, we find the search of Grooms's vehicle occurred during a continuous sequence of events after his stop. Eight minutes is not a long period of time and some of the delay can be attributed to Grooms's attempts to offer explanations for his prior criminal

conviction, for his return to the pub, and for his possession of the two cases. Under Hrasky, we find Grooms was a recent occupant of his automobile.

In addition, as a policy matter, Grooms argues the search should be found invalid because there were no safety issues and no probable cause to believe evidence relevant to the crime of arrest would be found in his vehicle.[5] Grooms argues the law governing the Fourth Amendment exception for a search incident to arrest has diverged from the rationale expressed in Chimel v. California, 395 U.S. 752 (1969). He argues the dual purpose behind a contemporaneous search incident to arrest of both the person arrested and the immediate surrounding area is (1) the need to remove weapons that might be used to resist arrest or escape and (2) the need to prevent concealment or destruction of evidence. Belton, 453 U.S. at 457-58 (citing Chimel, 395 U.S. at 762-63). Once a person has been arrested, frisked and handcuffed, Grooms argues the rationale for a search for weapons used to resist arrest or escape disappears. With respect to the need to prevent concealment or destruction of evidence, Grooms argues searches should be limited to those cases in which there is *probable cause* to believe evidence relevant to the *crime of arrest* might be found in the vehicle. He argues this case provides an excellent forum for determining whether Belton and Thornton should be modified in light of what he argues is an erosion of their underpinnings.

Whether or not the Supreme Court has strayed from its early rationale in Chimel, its precedent is clear in this case. Belton and Thornton are controlling.[6] Because only the Supreme Court can overrule Supreme Court precedent, see Thomas v. St. Louis Bd. of Police Comm'rs, 447 F.3d 1082, 1086-87 (8th Cir. 2006), we decline to consider this aspect of Grooms's argument.

---

[5]Grooms was arrested for outstanding warrants related to traffic violations, but was stopped because of his threats to shoot the bouncer.
[6]We note Thornton is recent precedent, decided in 2004.

-6-

## III

The district court properly denied Grooms's suppression motion.  We hold the search of his automobile was a valid search incident to arrest.

_____